McClay, adm'r, *et al. v.* Norris.

WILLIAM R. McCLAY, administrator, &c. *et al.*, plaintiffs in error, *v.* GEORGE H. NORRIS, defendant in error.

## *Error to La Salle.*

An infant may prosecute a writ of error in the Supreme Court by his next friend. If, however, he prosecutes in his own name, and there is a joinder in error, his disability is waived by that proceeding.

A writ of error is a writ of right, and may be prosecuted in all cases, unless prohibited by some statute or inflexible rule of law.

The general rule in regard to taking testimony in Chancery cases is, that it is not to be done *viva voce* in open Court as at law, but written questions are to be put to the witnesses, either by an officer of the Court, or by some person duly authorized, and the answers are taken down in writing by such person.

To the general rule that all testimony in Chancery cases is to be taken in writing, there are two exceptions: *first,* proof of exhibits in or attached to and made a part of the complainant's bill or the defendant's answer; and *second,* where, under the statute, the Court has authority, for want of a plea or answer, to render a decree *pro confesso* against the defendant. In either of these cases, evidence by parol may be heard upon the trial of the cause.

An answer of a guardian *ad litem*, if it admit the truth of the charges in the complainant's bill, cannot affect the infant's rights; but, with respect to him, all allegations must be proved with the same strictness as if the answer had interposed a direct and positive denial of their truth.

Neither a default, or a decree *pro confesso* can be entered against an infant.

Where infants are defendants in Chancery proceedings, the proper and convenient practice is, for the Court to refer the matter which requires to be proved to the Master in Chancery, that he may take the evidence and report the facts to the Court for its final determination.

When a question of fact is referred to the Master in Chancery, it is his duty to appoint a day for the examination of witnesses before him, of which the parties should receive due notice. The witnesses may then be examined *viva voce,* or upon interrogatories, and must then be taken down and preserved by the Master, so that the same may, if necessary, be used by the Court. The Master is not required to report the evidence, nor the circumstances to the Court and leave the Court to draw conclusions; but he is to report facts, and conclusions of his own, unless, under special circumstances, a question of law is involved, upon which the opinion of the Court should be taken. This report being prepared, either party may file objections to it before the Master prior to its being returned into Court. If the objections are not sustained, and the Master adheres to his report, he returns it into Court, where the party objecting may file exceptions, upon the hearing of which the whole evidence is brought forward, and passes in review before the Court.

BILL IN CHANCERY to foreclose a mortgage, and to correct mistakes therein, filed by the defendant in error against

McClay, adm'r; *et al. v.* Norris.

the plaintiffs in error, in the La Salle Circuit Court. The cause was heard at the November term 1842, before the Hon. John D. Caton, when a decree of foreclosure, &c. was rendered.

The substance of the bill and proceedings therein will be found in the Opinion of the Court.

*T. Ford,* for the plaintiffs in error.

A writ of error is a writ of right, and cannot be denied except in capital cases. *Bowers* v. *Green,* 1 Scam. 42. This case refers to the statute. See Rev. Stat. § 7, page 143, as to the jurisdiction of Courts of Equity.

The decree not having given day to the defendant, makes it final as to him, and therefore, he ·may prosecute a writ of error.

A writ of error will lie to the Circuit Court, sitting as a Court of Chancery. *Greenup* v. *Porter.* 2 Scam. 417. Therefore, if a writ of error is a writ of right, it is a writ of right as well in Chancery cases as others.

There is no evidence in the record, that John Armstrong is a minor, or otherwise. If he is a minor, and does not sue out his writ by his next friend, the fact, before joinder in error, can be shown, and the writ dismissed under the Practice Act. This objection goes to quash the writ, and is in the nature of a proceeding in abatement, and cannot be taken advantage of after joinder in error. It is of the same nature as an objection to a want of security for costs, by a non-resident, which must be noticed before a plea to the merits is put in. But as the objection has not been thus made, the Court, if they deem it for the benefit of the infant, may, and will presume that he has become of age.

The question, then, before the Court is simply this, whether an infant after he comes of age may not prosecute a writ of error. *Bowers* v. *Green,* 1 Scam. 42; *Greenup* v. *Porter,* 2 do. 417; Rev. Stat. § 7, p. 143. A writ of error is barred in five years, but when an infant thinks himself aggrieved by any decree or judgment that may be reversed in

the Supreme Court, he shall have until five years after he comes of age.    This is the Statute of Limitation contained in the Practice Act.    Rev. Stat. § 53, p. 421.

This Common Law and statutory right to prosecute a writ of error is not taken away by any of the authorities referred to.    All they prove is, that the infant when he comes of age, has another and perhaps a fuller remedy.    A writ of error reaches errors only which appear on the record; a bill of review reaches errors both of law and fact.    The case in 18 Vesey, 83, proves only that the decree to foreclose would bind the infant, and that he ought to have a day to show cause after he comes of age, (note here,) the Lord Chancellor afterwards made a precedent to sell.    In connection with this the New York practice has been to sell.

Foreclosure by sale has grown to be the settled practice every where since the above decision, and I shall not detain the Court by referring to authorities on this point.    But a decree of strict foreclosure ought not to be made, where it is not manifestly for the interest of the mortgagor.    This is the doctrine in the 4th vol. of Kent's Commentaries.    Strict foreclosure ought not to be decreed against an infant unless it appears that it was the best for his interest.    The decree does not pretend to find whether the land was, or was not worth more than the sum secured by the mortgage.

A decree is erroneous which hath not these words: "Unless cause be shown within six months, &c."    8 Eng. Ch. R. 59, 60, 62.    This case proves only that the Chancellor was in doubt, whether an infant could be let in to defend and make a new case, but he has no doubt of his right to prosecute a writ of error.

The doctrine has since been well established, that an infant may have a bill of review, be let in to defend and make a new case after he comes of age, in all Chancery proceedings.    1 Smith's Ch. Pr. 259; 8 Peters, 143.    It is said that this decision is founded on a statute of Maryland.    If so, then the infant must have his writ of error here, or there is no remedy.    But so far as the statute requires, it only made the case a Chancery proceeding.    This case nor any other

pretends to decide that because the infant has a right to make a new case of law and fact after he comes of age, that he has no right to a writ of error to reverse for errors of law appearing on the record. The writ of error may be all sufficient for his purpose, and why compel him to make a new case?

It is said on the other side, that the infant may have error and bill of review both. If John Armstrong is of age he has made his election; if not, it is the defendant's fault that he did not show it before he joined in error. The Court cannot know that the plaintiff is an infant. Nothing of the sort appears on the record. On the contrary, as the defendant has not objected, the presumption is that he has come of age.

Then is there error of law in the record? 1. The Court decreed that there was a mistake in the mortgage. The matter mistaken is a capital fact, and ought to be proved as other facts. And in case of an infant, it ought to be proved by evidence of record. The case in 2 Scam. 218, did not turn on this point; the question was not raised, though the Court think the guardian may admit the facts in the bill. But the point relied on there arose on the Statute of Frauds. The infant's answer cannot be read in evidence against him; it is the guardian's answer. 1 Smith's Ch. Pr. 259; 8 Peters,144-5. The facts of the bill ought to be proved notwithstanding an answer admitting them all.

If it be true that the facts are to be proved, how are they to be proved? As against the infant, in the same manner, I contend, as if he had answered denying everything. In this case, the guardian *ad litem* has admitted nothing. The administrators are not parties in interest, and are joined by statute for form, and because they have assets, and may pay the debt. *Pro confesso* against them should not prejudice the heir. He has the inheritance, and proof ought to conform to law as to him; no decree *pro confesso* against minors. If he is satisfied with the testimony, he may prosecute error and waive review.

The rules of evidence in Chancery require that the evidence should be in writing. 3 Black. Com. 449, 450; 1 Smith's Ch. Pr. 339. And it is to be presumed that the record contains all the evidence, for which see 4 Scam. 126; Rev. Stat. 93, § 1.

The trial of issues out of Chancery is a legal proceeding, and there may be an exception, but no bill of exceptions can be filed on a hearing in Chancery. If, then, there is no bill of exceptions allowed, the only mode of preserving the evidence in the record, is by depositions and other writings in the record, or by a Master's report. The Master is to take down the evidence in all cases of reference to him, for the use of the Court if necessary. 1 Barb. Ch. Pr. 501, 502.

If the evidence is not taken down and put on the record for an infant, he will be denied his writ of error, or, at least, he will get no benefit from it. Parol evidence may be given against parties on a decree *pro confesso*, because one who will not answer the bill, may well be presumed to have no defence. But no such presumption can safely be indulged as against infants.

It is said that the mortgaged property has greatly increased in value. This is *dehors* the record. I might as well say that the lot was worth three times the amount of debt secured on it, and thus attack the strict foreclosure.

The complainant ought to proceed cautiously, and at his peril as against an infant, and if it be true, as the defendant contends, the infant defendant has a bill of review when he comes of age, and if he will come of age several years hence, and if there is error in this proceeding, the sooner it is looked into, the better it will be for the defendant; for if deferred, the property, by improvements the defendant may put on it, may be made still more valuable, and make the case still worse for the defendant.

The bill of review, after the infant comes of age, ought not to be the only remedy. The witnesses for him may die, and other evidence upon which he might rely, might be lost or de-

stroyed by time and accident. And if the infant complains only of error apparent on the record, there can be no manner of use in restraining him to a bill of review as his only remedy.

*O. Peters*, for the defendant in error.

As to the infant, John Armstrong. The Court is the guardian of the rights of infants. When an infant defendant is before the Court, it will see that its rights are protected. The law has provided no particular mode of doing this by the Court.

It is not denied that, ordinarily, the mode of proof in Chancery causes, when an issue is made, is by depositions. This is settled in the case cited on the other side. *Holdridge* v. *Bailey*, 4 Scam. In that case, however, the bill was founded upon the bond, which had been lost, and which was not made part of the record.

In the case of infants it is different. As to them, the Court has a general power to protect their interests and rights. It is bound to appoint a guardian *ad litem*, it has power to control the guardian, to make him perform his duty, to remove him, &c.

But the Court may make all necessary inquiries by itself or its Master. It is usual to refer the matter to a Master, but this is not necessary. *Wall* v. *Bushley*, 1 Brown's C. C. 425. top paging. The Lord Chancellor says, that though it is usual, in case of infants, to refer the matter to a Master, yet it is not necessary. But if the decree is rendered without such reference, the authority is the same as if it had been referred. So in *Quantock* v. *Buller*, 5 Mad. Ch. R. 56, held that depositions taken before the infants were made parties, should not be read against them, but the cause should go to a hearing, and as to the infants, referred it to a Master.

The Master, as a general rule, when a reference is made to him, may take the testimony orally; the usual mode is so to take it. 1 Barbour's Ch. Pr. 502, 83, 148, 150, 334, 373, 149. What the Court may do by another, it may do itself. If it is proper for the master, who only acts for the Court, to take oral testimony, surely the Court may do the same

thing. If so, then it would seem to follow, that the judgment should not be reversed because the evidence is not contained in the record. It was competent, as already shown, to prove by parol, as against the other defendants, that there was a mistake in the mortgage. Can it be said that it was the duty of the Court to delay the cause and put this infant and other parties to the expense to obtain depositions, when the Court had already become fully advised, that it was equitable and right to amend the mortgage? As the guardian of the infant, could not the Court be as well advised in this mode as any other?

The answer of the infant only puts the Court upon inquiry as to what is right, and is most beneficial for the infant. The Court, as guardian of infants will be careful to see their rights protected; and it is enough that the Court is satisfied. No rule of law or practice points out what evidence the Circuit Court shall require. It *is* enough that the Court is satisfied.

The case of *Thornton* v. *Heirs of Henry*, 2 Scam. 219–21, shows that it is matter of discretion with the Circuit Court, and is an authority directly in point.

But if there was error in the proceedings, the parties have not sought the proper remedy. On this writ of error, this Court can make no inquiry so as to do justice, and decree that which is best for the minor. No authority can be found for the correction of an error of a decree in Chancery by an infant, by a writ of error.

There are several modes provided by law, that an infant may obtain relief from an erroneous decree. On coming of age, he may put in a new answer and make another defence, and examine witnesses. *Fountain* v. *Cain*, 1 P. Williams, 504; *Napier* v. *Effingham*, 2 do. 401; or, he may have a bill of review, or a re-hearing, or he may impeach the decree for error, by an original bill, charging that the first decree was obtained by fraud, &c. *Richmond* v. *Taylor*, Ib. 736, note; *Brook* v. *Hereford*, 2 do. 519. Infants are as much bound by decrees of a Court of Chancery as adults. *Williamson's heirs* v. *Johnston's heirs*, 4 Monroe, 255.

It would be a useless ceremony to reverse the decree on this writ of error, inasmuch as it will not restore the infant to his estate, nor re-instate him in any of his rights. By the foreclosure, the estate becomes vested in the mortgagee, fully divested of any equity of redemption. But the infant, even if this decree should be reversed on this writ of error, must still go into the Circuit, by bill of review, original bill, petition, or motion, so that the Court may see that no injustice is done; so that the reversal of this decree, will be a work of supererogation, and afford no relief whatever to the infant. If the decree is reversed, this Court cannot decree an account, or restore the estate to the infant, but must leave him to his petition, &c., in the Circuit.

Though it may be erroneous, in other cases than foreclosure, to take a decree against an infant without giving him a day in Court after he shall arrive at full age, yet though the decree be thus taken, it bars him of no right; he has his day in Court, nevertheless, when of full age; 1. Barb. Ch. Pr. 335; and the Court will open the decree or not, as it shall appear to be for his benefit.

Had the question been, whether a decree was regular that directed a sale of the mortgaged premises, the plaintiffs in error could have sustained their proposition by the authority of numerous adjudications. It is only comparatively recently that decrees for sale of mortgaged premises were made. The legislatures of many of the States have given the authority to Courts of Chancery, to order sale of the premises, instead of a strict foreclosure.

In the case of the *Bishop of Winchester* v. *Beaver*, 3 Vesey, 317, it is held, "an infant may be foreclosed. You can have your decree against him. He is foreclosed to all intents. You may go to market with it, (his estate,) and the purchaser is only liable to be overhauled in the account."

In *Goodier* v. *Ashton,* 18 Vesey, 83, Sir William Grant refused an application for a decree of sale against an infant heir of the mortgagor, and decreed a foreclosure. He says, "the modern practice was to foreclose infants, and he would not make the precedent." But in the case of *Munday* v.

*Munday*, 1 Vesey & Beames, the Chancellor said, "that if there was no precedent for decree of sale of mortgaged premises, he would make one."

Such had long been the practice in the Irish Courts, and when the precedent was set by Lord Erskine, it was followed in England. As late as the case of *Lansing* v. *Gaelet*, 9 Cowen, 358–83 per Jones, Chancellor, there will be found a very full discussion of this subject, and review of the authorities. And see *Kelsell* v. *Kelsell*, 8 Eng. Ch. R. 58, where it is holden, that infants may have their day in Court to open a decree, after attaining full age, but that this does not extend to foreclosure suits.

There is no reason why the infant should come here for relief, on account of his infancy. Even at law, he must seek his remedy in the Circuit Court. *Beaubien* v. *Hamilton*, 3 Scam. 213.

But an infant cannot prosecute a suit but by his *prochien amie*, and John Armstrong cannot prosecute this writ of error, but by his next friend. He has not done it in this case.

If this Court will let the infant in to his relief on his writ of error, great injustice may be done to innocent purchasers, who hold under the decree. They have purchased under the faith of a decree of a Court of general and competent jurisdiction. Even though it may not affect the title thus acquired, yet it may beget distrust of the title, and depreciate the value of the property. Large and valuable improvements may have been made upon the lot, and this Court cannot say that the infant shall be let in to enjoy the benefit of the labors and capital of innocent purchasers. If such shall be the result, it will alarm the community, and no one will be found to purchase property sold under a decree of Court. But a further answer is, that on inspection of any authorities or practice in other Courts, in other States and countries, it is sufficient to say, that a practice precisely like that pursued in this State, has been very generally pursued in this State for a long period of time. It has become a rule of property. The title of immense amounts of property rest wholly upon the validity of similar proceedings. If this

decree is reversed, there will be no end to the evils resulting to property holders thereby. Courts have always been careful to conform their decisions to a state of things as they exist, when the interests of the community, and titles to property are to be seriously affected. It is much on this principle that local and general customs, contravening rules of law, have been regarded, and rights acquired, protected under them.

The Opinion of the Court was delivered by

PURPLE, J. On the 2d day of October, 1841, Norris, the defendant in error, filed his bill in the La Salle Circuit Court, against the plaintiffs in error, to foreclose a mortgage executed by James G. Armstrong in his lifetime, upon a lot in the town of Ottawa in said county. Among other things, the bill alleges that there was a mistake made in the description of the lot, by the omission of the words, "in the town of Ottawa and county of La Salle," which were intended to have been inserted as part of the description of the mortgaged premises, and also, that by mistake, the said James G. Armstrong, at the time he signed said mortgage, omitted, contrary to the intention of the parties, to affix his seal to the mortgage. It is also shown by the bill, that John Armstrong is the son of said James G. Armstrong, and that he was a minor at the time of the filing of the bill. The prayer of the bill asks, that the mistakes in the making and execution of the mortgage may be be corrected, and amended so as to conform to the original agreement and intention of the parties, and, that the same, in default of the payment of the money due thereon, may be foreclosed. Process was duly served on all the defendants in the Court below.

James J. Holt was appointed guardian *ad litem* of John Armstrong, and filed the usual answer, that he had no knowledge of the matters charged in the bill of complaint, and requesting that the rights of the said minor might be secured to him.

McClay and Mrs. Armstrong filed a plea in abatement, which, upon hearing, was adjudged insufficient by the Court,

and making no farther answer or defence, the bill was taken as confessed against them. Whereupon, without farther evidence appearing in the record, other than a recital in the decree, that "the Court having heard the proofs and allegations of the parties," a decree was made and entered, directing the mortgage to be amended and corrected as prayed for in the bill; that the sum due by the mortgage, should be paid on or before the first day of the next term of the Court; and, that in default of such payment, the said plaintiffs in error should be barred and foreclosed of all equity of redemption in and to the mortgaged premises.

Several errors are assigned as causes for a reversal of this decree, but the one principally relied upon is, that it is not apparent from the record, that there was any evidence in the Circuit Court to sustain the decree as against the minor, John Armstrong.

Preliminary to the discussion of this main question, it will be proper to notice some objections taken by the counsel for the defendant upon the argument. He contends, *first*, that an infant is not entitled to a writ of error in a Chancery proceeding; that his remedy when he arrives at his majority is, by application to the Circuit Court, in ordinary cases to be let in to make defence; and *second*, that in cases of foreclosure, he is not entitled to his day in Court.

At a remote period of the history of English jurisprudence, when suits were prosecuted against an infant, relating to real estate which had descended to him, he was permitted to resort to his parol demurrer, which is defined to be, "a plea or privilege formerly allowed an infant sued concerning lands which came to him by descent; whereupon the Court gave judgment, *quod loquela predicta remaneat quousque;* the infant attained the age of twenty one years. And when the age was granted on parol demurrer, which might happen on the suggestion of either party, the writ did not abate, but the plea was put *sine die* until the infant was of full age, and then there was a re-summons." 3 Tomlin's Law Dic. 64.

Experience having shown that the practice of allowing

McClay, adm'r, *et al. v.* Norris.

parol demurrers, was attended with much inconvenience and vexatious delays, in process of time a different rule obtained, and instead of the parol demurrer, which had been formerly interposed in behalf of infants, in Chancery proceedings against them affecting their interests in lands, upon the proper proof being made, a decree was immediately entered up against them to be binding, unless they should within six months after they should have attained the age of twenty one years, (being served with process for that purpose,) show unto the Court good cause against the said decree.

All the authorities which have been referred to, and others which have been examined, both English and American, maintain the principle that in suits and proceedings against infants, at law and in Chancery, whereby they are divested of their lands, (except in cases otherwise provided for by special statutes,) they are entitled to their day in Court. The case referred to in 3 Vesey, 317, is not in conflict with this principle. It is decided there, that "an infant may be foreclosed. You can have your decree against him. He can do nothing but show error. He is foreclosed to all intents. You may go to market with it, (i. e. the estate) and the purchaser is only liable to be overhauled in the account."

The distinction taken by, and which runs through all the authorities cited and examined is this: In cases of foreclosure, whether by sale or otherwise, the infant on arriving at full age, on showing cause, can only allege error on the face of the decree; whereas, in other cases, he will be permitted to file a new answer, and litigate the merits of the case. To review the decisions upon this question, inasmuch as they appear to be all one way, would be unnecessary. A simple reference to them will be sufficient. 18 Vesey, 83; 21 do, 223; 9 Cowen, 397; 4 Monroe, 225; 3 Johns. Ch. R. 367; *Kelsell* v. *Kelsell,* 8 Eng. Ch. R. 58; 1 Smith's Ch. Pr. 419; 1 Barb. do. 34, 149; *Harris* v. *Youman,* 1 Hoff. do. 178. Such has been, and still is the doctrine of the English, and many of the American Courts. Whether this rule obtains in

McClay, adm'r, *et al. v.* Norris.

this State, or is changed or repealed by the second section of the Act concerning "Fraudulent Devises," approved February 28, 1833, (Revised Laws of 1833, page 315,) is not necessary to be determined in this case, and is a matter of such grave and serious import, that without further reflection and examination, we are unwilling to express any opinion upon it. We do not, however, entertain any doubt, (whatever may have been the prevailing practice in England and the United States,) that an infant may, if he sees proper to do so, prosecute a writ of error in the Supreme Court of this State. So that, in the view we take of this case, it is immaterial whether it is to be intended by the record that John Armstrong is, or is not now, a minor. If an infant sues out a writ of error, he should do so by his next friend; but no objection could be taken against his proceeding in his own name, after the party has joined in error. The infant's disability is waived by such proceeding. Our opinion of the right of any person, whether infant or adult, to prosecute a writ of error in this Court, is founded upon the fact, that it is a "writ of right," and lies in all cases, unless prohibited by some statute or inflexible rule of law; and also upon the statute of our State, passed July 1, 1829, entitled "*An Act regulating the Supreme and Circuit Courts*", by the second section whereof, it is provided: "The said Supreme Court shall exercise appellate jurisdiction only, (except as hereinafter excepted,) and shall have final and conclusive jurisdiction of all matters of appeal, error or complaints, from the judgment or decrees of any of the Circuit Courts of this State, and from such other inferior Courts as may hereafter be established by law, in all matters of law and equity, wherein the rules of law or principles of equity, appear from the files, records, or exhibits of any such Court, to have been erroneously adjudged and determined." "And their judgments, decrees and determinations, shall be final and conclusive on all the parties concerned." Revised Laws of 1833, pages 147–8.

This statute is broad and comprehensive in its terms, and

seems designed to embrace every case in which an erroneous decree or judgment may have been rendered in the Circuit Court.

Such a construction of this law cannot operate to the prejudice of any parties. For, if an infant sues out a writ of error, and a decree in this Court is passed against him, such decree would be conclusive as well against him, as it would have been had he attained full age, both under the provisions of the statute before recited, and upon the principle that he is a plaintiff in the writ of error, and as such, concluded by the judgment or decree. *Williamson's heirs* v. *Johnston & Nash's heirs*, 4 Monroe, 255.

It must be apparent, then, that it is most beneficial to the opposite party, that an infant should prosecute his writ of error at the earliest period after any error in the record may have been discovered, without waiting until he arrives at full age. For it cannot be disputed, that when his minority had ceased, he would, by the English practice, in a case like the present, be entitled to show error on the face of the decree, the effect of which would be to reverse the judgment in the same or a similar manner, and with like effect upon the interests of the parties, as would result from a reversal in this Court.

I proceed to the inquiry, whether the decree rendered in this case is sustained by the facts appearing upon the record. In the determination of this question, there is an important principle of law, and rule of practice necessarily involved. Of law, as to whether the answer of a guardian *ad litem* of an infant defendant can in any event affect or conclude the the rights of such infant; and of practice, as to the method of proof in Chancery cases, and whether it must be shown by evidence in the record that the decree made was properly rendered.

With regard to the method of taking testimony in Chancery cases, the general rule is, that it is not to be done *viva voce*, in open Court, as at law, but written questions are to be put to the witnesses, either by an officer of the Court, or by some person duly authorised; and the answers are taken

down in writing by such persons. 1 Smith's Ch. Pr. 339; 1 Barb. do. 309–10. The only exceptions to this general rule are two: *first,* proof of exhibits in, or attached to and made part of the complainant's bill, or the defendant's answer; and *second,* where, under our statute, the Court has authority for want of plea or answer, to render a decree *pro confesso* against the defendant. In either of these cases, evidence by parol, may be heard by the Chancellor upon the trial of the cause. In the first case mentioned, the evidence is confined to the proof of exhibits, and will scarcely ever be received when anything but handwriting is to be proved. This kind of testimony is applicable to ancient records and writings, office copies of records, deeds, bonds, instruments in writing to which there may be subscribing witnesses, promissory notes, bills of exchange, letters, receipts, &c., all which, when made exhibits, may be proved at the hearing. But this cannot be permitted when something more than bare proof of handwriting is required. If the evidence is of a character to admit of cross-examination, or requires other testimony to be given to entitle it to be received, such as proof of the death or absence of a subscribing witness before his handwriting can be proved; or if a document is impeached by the defendant's answer, the testimony, if offered at the hearing, will be rejected. 1 Barbour's Ch. Pr. 309–10; *Holdridge* v. *Bailey,* 4 Scam. 126; 1 Smith's Ch. Pr. 339.

Such, we believe, has been the usage and practice of Courts of Equity from the earliest period of their establishment down to the present time; and this usage and practice, when not otherwise prescribed in our Chancery Act, is made the rule of proceeding in the Courts of Chancery in this State. 118, § 1. Wherever, by the rules of proceeding in this State, as prescribed by our statute, a bill may be taken for confessed against the defendants, which occurs in cases of default in filing plea or answer, the Court may hear oral testimony of witnesses, or in its discretion may examine the complainant under oath, in which cases, the evidence on which the decree is founded need not be spread upon the record.

McClay, adm'r, *et al. v.* Norris.

Upon the other question, it is entirely clear, that the answer of a guardian *ad litem*, even if it shall admit the truth of the charges in the complainant's bill, can in no case affect the infant's rights; and with respect to him, all allegations must be proved with the same strictness, as if the answer had interposed a direct and positive denial of their truth. No default or decree *pro confesso* can be entered against him. "A decree upon an answer of a guardian *ad litem*, will not bind an infant. He can open it, or set it aside when he comes of age. No laches can be imputed to him, and no valid decree can be awarded against him merely by default. The plaintiff, in such case, ought to prove his demand, either in Court or before the Master, and the infant is usually entitled to a day to show cause. When he comes of age, he is to be served with process of subpœna for that purpose; and then he is not entitled to redeem, but only to show error in the decree." "The plaintiff must prove his debt before the Master in the same manner as if nothing had been admitted by the answer, and the Master must report such proof, &c." 3 Johns. Ch. R. 367; see, also, 3 Powell on Mort. 980; *U. S. Bank* v. *Ritchie*, 8 Peters, 144; 1 Barb. Ch. Pr. 149; 1 Smith's do. 259.

If it should be asked whether it is deemed indispensable in all cases, where infants are made defendants in Chancery proceedings, that the complainant must go through with all the formal requirements of the statute, by giving notice to the infant or his guardian, the length of time required, and by taking depositions, to be read and filed in the cause, we answer that we think not. A proper and convenient practice is, for the Court to refer the matter which requires to be proved to the Master in Chancery, that he may take the evidence and report the facts to the Court for its final determination. Or perhaps the Court in its discretion, the guardian *ad litem* of the infant being present, and being permitted to cross-examine the witnesses, might hear the testimony in open Court, and cause the same to be reduced to writing, and made part of the record. The inconvenience of this

practice, however, if allowable, ought, in the judgment of the Court, to operate against its adoption.

As to the subjects which may properly be referred to a Master, no general rule can be laid down. It is stated in 1 Barb. Ch. Pr. 468, and sustained by numerous authorities there referred to, that "there is no question of law or equity, or disputed fact or facts, which a Master may not have occasion to decide upon, or respecting which he may not be called upon to report his opinion to the Court."

When any question of fact has been so referred, the Master's duty is to appoint a day for the examination of witnesses before him, of which the parties should receive due notice. The witnesses may be examined *viva voce*, or upon interrogatories, and the evidence is taken down and preserved by the Master, so that the same may, if necessary, be used by the Court. 1 Barb. Ch. Pr. 502; 2 Smith's do. 147. The Master is not required to report the evidence nor the circumstances to the Court, and leave the Court to draw conclusions; but he is to report facts, and conclusions of his own, unless under special circumstances a question of law is involved, upon which it is proper that the opinion of the Court should be obtained. 1 Barb. Ch. Pr. 544; 2 Smith's do. 161.

After the Master's report has been made out, if either party is dissatisfied therewith, it is usual to file objections to the same before the Master, before the report is returned into Court; the object of which, is, to give the Master an opportunity to consider and re-examine the same, and if he deems it in any respect erroneous or improper, to correct it. If the objections are not sustained, and the Master adheres to his report, it is returned into Court, when the party objecting may file exceptions, upon the hearing of which the whole evidence is brought forward, and passes in review before the Court. 2 Smith's Ch. Pr. 166–7–8; 1 Barb. do. 546. Thus far these questions have been discussed, partly for the reason that we considered the principles not inapplicable to the case at bar, and partly because it is apprehended that in cases like the present, a laxity in practice has been fre-

quently indulged, which is unwarranted in law, and highly dangerous to the rights of infants, of whose estates and interests the Courts of Chancery are nominally, and should be practically, guardians.

It remains only to apply these principles to the facts presented in this record to determine whether this decree shall stand. And we feel no hesitation in saying that the decree is unwarranted by any evidence before us. The bill contains an allegation of a mistake in the description of the mortgaged property, by an omission of the words, "in the town of Ottawa and county of La Salle." Without the correction of this mistake, the description was unmeaning, and applied as well to any other lot, as to that which has passed to the defendants in error under this decree. The Court had, in this case, no power to correct this mistake without evidence of its existence, and of the original intention of the parties at the time of the execution of the mortgage. There is no such evidence in this record.

The decree of the Circuit Court is reversed, and the cause remanded for further proceedings not inconsistent with this Opinion, the defendant in error to pay the costs in this Court.

*Decree reversed.*